at all, or argument not to exceed 15 minutes per side. Eric Wilbekin for the appellant. Honorable judges of this court, good morning. My name is Eric Wilbekin. I represent the Myers family, who is seated in the back, and I'm here to  speak on behalf of the district court to the right of the bench. Your Honor, we brought this case before the court, asking the court to remand this case back to the district court for further proceedings. It is our position that is stated in the brief that the granting of summary judgment in this matter was not appropriate. At this point in time, if the court would so allow, I can address certain issues that I've been asked to present. Within the subsequent order that was sent, I received a directive to be able to address the issues of Hensley v. State Farm. It is the appellant's position that that is exactly on core with our issues here. In addition to the parties not having equal bargaining power, at the time that the insurance contract was entered into, it is our position that the cause of action for this case was not appropriate. The plaintiff's cause of action, now the appellant, had not accrued at the time, had not accrued until the expiration of the, until long after the year that has been stated. So it's your position that the cause of action, notwithstanding the language of the contract, did not accrue until after the denial of their claim? Yes, ma'am. And so we should measure the time, whatever that time period is, from the period of denial to enforcement. Yes, ma'am. As the facts would indicate there, there was work that was done by way of investigation. The records also indicate that during that time period, now my clients will concede the Smith v. Allstate case and any and all other matters that would say that the year, the limitations that they signed on to were okay. But we don't think that the cause of action began to accrue until we got that denial letter in May 9th of 2013. I'm sorry, you made reference to the Smith case, but are you saying it isn't on point, or are you saying that it shouldn't control even though it's on point? I'm saying that it shouldn't control in this matter, Your Honor, sir, because the cause of action did not accrue. In this action, first of all, there was a confusing and it's our position that the contract was confusing there in the first place because Section 16 differs from that of Section 17 within the contract. It actually called for the year, but it actually said that Section 17 would conform to statute. As the Court is aware, there is a 10-year statute of limitations. How is that any different from what happened in Smith? I thought they were interpreting the same statute and the same type of contract. I don't think so, sir. I think the case that we have stated here, the Hensley case, actually suggests of the equal and unequal bargaining powers and that any contract of this type must be within public policy. We would respectfully argue that the contract as it's stated is clearly outside of public policy because it would have, in our opinion, if it would have been within public policy, the more prudent thing would have been to have that party initial that same section as to when it would have started, as to when their rights to sue would have ended. I understand that Hensley supports your position from the Court of Appeals in Kentucky, but is it not that Hensley is on appeal before the Kentucky Supreme Court and do we have any notion of what's happening in that appeal? I'm sorry, do we have any notion? I mean, as I understood it, that Hensley is being held in abeyance pending Riggs and Riggs has been argued now for nearly a year. I don't know if you have had anything to do with that case or any interaction with the lawyers there. One of the reasons that I think we asked for the counsel to be prepared to address those two cases is the question of will the Kentucky Supreme Court likely resolve this issue because, of course, we're interpreting a matter of Kentucky law in either case. And so just didn't know if anybody had either practical or legal arguments with respect to what's going to happen once the Kentucky Supreme Court decides that case. I would think that given this matter, see, this is the first time, this is a case of first impression, and this is the first time that an issue of this type has made it this thus far. I would think that there's going to be an event. Doesn't tell us anything about it? I think Smith would tell us, Smith tells us a lot if the parties were on equal footing and there was a total understanding of what's going on. As stated in my brief before this court, my parties were of, they're farmers, they were of education to where this is a standard contract, a standard insurance contract. A standard insurance contract which favors them. It is our position that not only does this affect the right of accrual as to when the parties would have had a right to sue, but additionally, it acts as a way of... But how is that different from Smith? Smith were homeowners in Pike County, Kentucky versus Allstate, which is a lot bigger than Mr. and Ms. Smith up in Pike County. Yes. So that's why I'm asking is, I mean, I didn't read Smith as saying the parties were of equal bargaining power or that it wasn't a standard contract. I don't think that, I think the real difference between all that here is that during the investigation time period, there were certain things that would have happened to where the parties didn't know whether or not they were going to, the actual contract was going to be breached. And so our position before the court is that they didn't know that there were going to be an actual party. And thus, I'm looking at this Hemsley case which actually states that the contract has to be within public policy, and it actually spells out the four principles of insurance policy consideration, and that these things have to be construed on behalf of the insured. And I'm asking this court to recognize that. If we're looking at contracts and we are asking them to favor the insured, I don't see how we are not, we should not be allowed to have this case to be remanded for further proceedings. Tell me how the defendant's investigation of the case prejudiced your clients, if that's an argument, that the manner of the investigation somehow prejudiced your clients. Well, first of all, the contract didn't call for what would actually happen in the investigation. Again, this is a standard contract, so my client would not have known to have entered the contract or what the rights and liabilities were if they didn't know what investigation was going to take place. In this particular case, there were some irregularities with the first adjuster. Mr. McNew? Yes, ma'am. Okay. The first adjustment is somebody would have to, somebody actually took that over. Now, all of that was within the year time period that defendants would allow was from the date of loss. So here's my client, not knowing when his rights accrue. I would go as far as to state that the defendant is trying to control their actual role as a potential tortfeasor because they did not, there is no way of knowing how everything would have turned out. And as it was, at the time of denial, it would have given them an unreasonable amount of time to secure counsel and for counsel to have looked over the terms of the contract, because it would have already been enforced, and then turn over certain actions to where a proper lawsuit would have been filed within the year, within the year time period. Are you saying that if we adopt the interpretation of the insurer here as to when the claim arises, that under some hypothetical situation, a claimant could actually be foreclosed from ever filing because the time would run perhaps before the denial? I mean, is that what you're saying? I'm saying exactly that, Your Honor. I'm saying that it would be an unrealistic time for a plaintiff to either in pro se fashion, which that wouldn't happen at this point, or even securing proper counsel who would have to, and even looking at an investigation that would be done. If there is a need for investigation within a year time period, then the claimant, plaintiff, appellant, should have had the opportunity to have gotten his own experts to rebut what the experts for the insurance company came with by way of a report and the denial of the claim. So on multiple fronts, my client, A, didn't get the benefit of the bargain, B, didn't get the time necessary to see whether his cause of action accrued, and last but not least, he wasn't able to rebut anything that was done by way of a report. So he's kind of like – Those are for the – you know you had – But in terms of filing suit, you don't have to be prepared to litigate the entire case. Your lawsuit would basically be, the hail came, they didn't pay me, they should have paid me. And then, you know, getting the reports and the experts and the answers, that's why litigation takes a while. All they had to do within the year is say, we lost our crop, pay me, and they didn't pay me. They could have said that within the year, but then again, we didn't know when the year would have started. Again, we're talking about people with minor education because they're farmers here, and they did not know that they were in a grieved party. And if the contract was interpreted to be of benefit to the insured, then the insured, while paying the premiums on this contract, did not get the benefit. You know, whatever investigation that was done, we don't know if that was prudent. We had no way of knowing. And if this case stops where it is, we will never have any way of knowing because of that year provision. We argue that the Hemsley case should be predominant as to giving our clients the opportunity to see if they're in a grieved party, to hire their own experts, to see if insurance coverage was warranted, to be able to litigate accordingly. But would you have the year run from a date of denial or from some date of discovery that they were in a grieved, you seem to use the term a grieved party. Would that be a different time than the date of denial, or would it be the same as the date of denial? I would argue before this court it would be the date of denial because that is the affirmative time period to where plaintiffs now know that I have an adversarial relationship with an insurance company that we have paid into. They did not receive the benefit of the bargain at all, and they were left with an unrealistic time period without counsel because it is our position that if the contract would have been noted as the lost date and this is your last date to sue, that very provision number 16, if they would have signed that... The contract couldn't know the lost date because the loss hadn't happened, right? The contract is signed, you buy the insurance, and then the loss happens somewhere out in the future. Well, again, this is a commercial contract, so it was just uniform. But they did... I don't think your time has expired unless my colleagues have further questions. Okay, if you reserved any time for rebuttal, you'll have that. Yes, sir. Thank you. Good morning, Your Honors. Brad Cunningham for the appellees, Agrilogic and Occidental. At its core, this appeal seems to be about the tension between two commercial parties' right to define their own terms and whether there is some public policy in play that would override their ability to do that. Mr. Cunningham, let me just ask you, as I say straight up, when do you assert that the claim filing period, pardon me, that the cause of action arose? When do you assert that it arose? It accrued on the date of loss, and that was the date that the parties agreed by contract that the date would accrue. And it is Agrilogic's position that private parties to a contract can set their own accrual date independent of any default date in a statute, and we think the Schultz decision from the Kentucky Court of Appeal supports that position. Let me give you a wild hypothetical. Let's assume that there is a contract with the terms as you have just described. A loss occurs on, you know, let's say day one. The claim is filed within a reasonable time, and I'm not going to define what that is. And then for whatever reason, investigations, whatever, the insurance company doesn't deny the claim until, let's say, a year and a day later. Wild hypothetical. If the period, if the time for accrual occurs at the time of the loss and not at the time of the denial, could a claimant ostensibly be ever foreclosed or denied the right to file a claim under my wild hypothetical? I don't believe so, Your Honor. You know, in that situation, I think there are two options. One would be for the plaintiff to go ahead and file suit because the reality is their claim accrued on the date of loss. They know that they have a statute of limitations that runs from one year, and any prudent plaintiff would do that. Or the other alternative would be to enter into a tolling agreement, which is common in personal injury cases, especially that have shorter statutes of limitations. So there wouldn't necessarily be the need for an unnecessary protective suit. Tolling agreements are always an option. And I do think it's important to point out here, one of the points raised by Mr. Wilbekin is the fact that there was only a short period of time between the end of the investigation or the denial and the date that the statute ran. And he noted on a couple of occasions maybe the lack of commercial sophistication of his clients. But I do think it's important to note that these clients were represented as of the date of the denial prior to the date of denial. And it's difficult to believe that any attorney representing plaintiffs in this circumstance wouldn't take – the first thing they wouldn't do is look at the policy for any applicable statute of limitations and either enter into a tolling agreement or file suit. Part of his position is that the insurance company controls the process. The insurance company drafts the contract. This is the way it gets into the unequal bargaining position. The insurance company drafts the contract. The insurance company controls the investigation. The insurance company controls the date of denial. And so he's saying that with all of the leverage, if you will, on the insurance side, it puts them, when it's a short period of time, in an untenable position, to use his word. Well, one thing I want to point out, I don't know that it's an untenable position. One difference, I think, between this type of insurance and the uninsured motorist type of regime that's at issue in Hensley, the uninsured motorist statute is part of a mandatory insurance scheme in Kentucky that requires all drivers of automobiles to have insurance. It is a much more consumer-oriented regime because everyone has to have that insurance. And so in that situation, I think it's more true that there is unequal bargaining power because people have no choice but to have that insurance, and it applies to almost everybody, so there's going to be people of all ranges of sophistication. I do think it's important to point out that these appellants, although maybe not sophisticated in commercial matters, were engaged in a commercial enterprise. This is a business policy. This is not really a consumer protection issue. They're engaged in a business. And so while it might be the case that these plaintiffs may or may not be sophisticated in contract matters, across the board, many farming operations are, and I don't know that it's always the case that crop insurers are in a position to completely control terms. Okay. One other question. Does Smith control? Does Hensley control? Why? Why not? I believe that Smith controls because it's well-reasoned. I think that plaintiffs and defendants are entitled to reach their own agreement, their own private agreement, as to when claims accrue and what that period of time will be within which they can file suit. Now, obviously, you have the Kentucky foreign insurer statute. That period can't be less than one year, so it has to be one year or more. But private parties ought to be able to reach their own terms on something like this, and it's not as though this limitations period was written in a confusing fashion or in fine print. It was very clear in everyday layman's terms that you must bring any suit against us within one year of the date of loss. It really couldn't be more clear. Let me ask this one final question, then I'm going to be quiet. But if the parties reach an agreement that contravenes public policy, should it still be enforced? No, but I don't think this agreement contravenes public policy. I know you don't think that. That's all I have. If Hensley is upheld, do you lose? I don't think so because Hensley deals with the universe of UIM coverage and the MVRA, which I think the court in Elkins noted that comparing the MVRA regime to the commercial private insurance regime that we have here is apples to oranges. Again, the MVRA is part of a mandatory auto insurance scheme that applies to everyone, and there are different considerations there, one of which being, and this is discussed in Hensley, the one-year period at issue in some of those UIM cases conflicts with a separate two-year statute of limitations for the underlying tort claim, so there's a mismatch that has to be addressed. Right, and that's a separate issue, and perhaps that rationale is one that this plaintiff cannot take advantage of, the rationale that looks at the mismatch between the statutes, but Hensley deals with a different issue, accrual, and I don't see where there's a valid distinction between this policy and that policy on the issue of accrual, so maybe you can enlighten me. Well, I do think, first of all, Hensley in interpreting the foreign insurer statute and making the determination that accrual means the common law definition of accrual, I don't believe is a good interpretation. I think there's lots of language out there in the case law that if the legislature intends to say something, they'll say it, and they didn't say common law accrual, they didn't say accrual pursuant to any particular statutes, they just said accrual, and the Schultz case, which is still good law in Kentucky, makes clear that the parties to a private contract can modify the accrual date by agreement, even if there is a separate accrual date in a default statute. Now, in that case, it was a professional negligence type statute where the date would either accrue on the date of discovery or the date that the plaintiff should have discovered, and the parties in that case decided to have the claimant issue run from substantial completion, and I don't think this case is any different than Schultz in that respect. These parties, there is a default statute, but these parties have decided to fashion their own agreement as to what accrual means, and again, these are private parties to a commercial insurance contract, a private insurance contract, not part of a public mandatory insurance scheme like the Motor Vehicle Reparations Act, and I think the considerations for the mandatory regime versus a private commercial regime are different. But you agree this statute applies? The foreign insurer statute? Yes. Yes. And what's your understanding of the Riggs case, which as I understand it is being held in abeyance pending Hensley? Isn't that even more squarely on point to this issue? I don't know the status of Riggs or when it will be decided, but again, I don't believe that the foreign insurer statute can be interpreted as prohibiting private parties from fashioning their own agreement as to what accrual means. I fundamentally disagree with that. Well, in, I guess maybe I'm wrong, but in Riggs it seems to be that the exact question is, is a time limitation that dovetails with the limitation in the statute, which in this case is one year, is reasonable and comports with public policy. The dissenting judge says that it is reasonable and comports with public policy, the issue raised by Judge Donald. The other two judges said no, which would seem to be contrary to your position, and isn't the Kentucky Supreme Court, if they decide that one way or the other, squarely on point with this?  That's a good question, but again, that interpretation, I think, would apply, I think these cases are within the context of UIM, and I think there are fundamentally different considerations. I don't know. You think both of them? You think there's no difference between Riggs and Hensley on that point? I think they both are concerned with that statutory regime, if I understand Riggs correctly. Well, the language certainly talks about can a limitation that comports with the statute, which in your case it does, it comports in the sense of it's the same length of time. So, okay, maybe we have a disagreement there. It certainly seems that Riggs is even more squarely on point. Well, again, I don't believe that the public policy considerations that apply to cases in the UIM context of the MVRA apply equally to a private crop insurance contract where you have insureds who are engaged in a commercial enterprise and aren't part of a mandatory statutory scheme. I think there could be a more persuasive rationale, a more persuasive public policy rationale in the motor vehicle context because of the fact that it's more of a consumer protection type regime. We're talking about private parties. If the Kentucky Supreme Court comes out for the insured, you still think you have an out, but certainly if the Kentucky Supreme Court comes out the other way in favor of the insurer in those cases, you'd surely say, well, that's binding on us. Perhaps. And what if you have a policy that requires all sorts of information be given as a prerequisite to suit? And the way it's construed by the insurer, this is a process that's uniformly a seven-month process. And nevertheless, the cause of action accrues under the contract on the date of the occurrence, and, you know, it's a year. Is that reasonable? I think whatever two private parties agree to is reasonable, but I also think in the insurance context there's a backstop, which is the bad faith statute. So I think that in conjunction with the fact that insurers, although they sometimes are slow to act, typically don't like to be sued. So if that insurer knows that the claim arose on the date of loss and that the insurer is either going to seek a tolling agreement or file suit within that one year, if the insurer thinks that that claim should be paid, there is incentive on the part of the insurer to go ahead and pay that claim, not invite a suit that's not necessary. And so, yes, I think the parties can agree to whatever terms they want. I think there is the bad faith statute that acts as a damper on the insurance company's ability to act unreasonably, and I think it's also in their interest not to get sued. Do you have any sense of what the practice is across the country? Some states, I know, just conclude that an insurance contract, the statute is tolled during a negotiation period. I think other states probably do have an accrual rule that says it's a breach of contract case, that the claim accrues when the contract is breached, when the claim is denied, and I have no doubt some of them are very strict about this year, though I'm not sure they have the kind of foreign insurer statutes that Kentucky has. Do you have any idea what the practice is across the 50 states? I don't know what the practice is across the 50 states. I know that numerous Kentucky courts have held that a contractual statutory period is not tolled between the date of the loss and the date of denial. In your argument, you talk about having requested further information. I didn't see the actual letter or whatever the means of communication. Is that in the record anywhere, or is it only the lane affidavit that says that you requested it? I believe that that correspondence is in the record, Your Honor. You don't have a citation for it? I don't. Okay. We'll look if you think. And your position is that they never responded to that request for information? Yes. Our position is that requests for follow-up information were provided and never responded to. All right. Any other questions? Anything else, counsel? No, Your Honors. All right. Thank you. Mr. Wilbekin, you have your time for rebuttal. Thank you, Your Honor. Honorable judges, thank you for the opportunity to speak again. I would like to respond a bit. Again, we would assert that our accrual time period and our status here did not start until the coverage was denied. Counsel has made arguments as to private parties being able to contract. And I think if the private parties are on equal bargaining ground, yes, the private parties can. Statute allows for there to be a shortening of the statute of limitations. But in this particular case, private parties were not on the same page. And I think as the defendants, they're the drafter of this document. I think that they should be held to a higher standard here than just private parties contracting. We weren't all at the same page at the same time here, obviously. Okay? Counsel has made mention of the fact that plaintiffs within that year time period from the law should have filed suit. Well, why would they have known to have filed suit when they didn't even know whether or not that their claim was going to be denied? Why would they take more time? They're already paying a premium to the insurance company. Why would they take more time and go into a court, take their own money to file suit, if they didn't know whether or not they were going to be denied coverage? As far as the entering of a tolling agreement, which was also mentioned, again, there's an assumption that these farmers are going to know, hey, I'm getting close to this. Maybe I better secure counsel, get a tolling agreement. They're not going to know anything about that. As far as attorney representation, whatever attorney that would have been there during that time period, again, is of the same position that they are. If I was there, I'm going to say, I don't know if you should file suit right away because I don't know if they're going to deny your coverage. As far as we're concerned, the leverage is, and I think your Honor, Judge McDonald mentioned that they're in an untenable position. That's what my clients have been in. They've been in a position of not knowing when they are an agreed party. Counselors may mention that they have engaged in business policies, but the business policies that we're talking about, they've drafted the contract. If the contract was clear in its terms as to starting date and date that our clients had to sue them and actually written it out for them because, as the record indicates, they gave certain Kentucky provisions for the law, they could have taken just a few more minutes and told these parties what dates certain things should have happened. As far as being of a different scheme of insurance, a contract is a contract is a contract. There's either total understanding or there's not. In this position, we're asking this court to step in. At last point, are you saying that there wasn't a meeting of minds on the contract? I don't think that there was a full meeting of the minds. I think this is in favor of the drafter because if there was such, then it should have been stated. One last question. I'd ask your adversary about the request for further information. Do you have any disagreement that they did request that information, and did your folks respond to it? I do recall that there has been some information that was requested. What I cannot say before the court is whether or not that was complied with or not or whether that had any bearing on whether or not the coverage was denied. Okay. Thank you, counsel. Thank you. The case will be submitted, and the clerk may call the next case.